UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-569-MOC

| | |
|---|---|
| DAVID CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| KILOLO KIJAKAZI, ) | |
| **Commissioner of Social Security,** ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 16, 20). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

On April 4, 2014, Plaintiff filed a claim for supplemental security income under title XVI of the Social Security Act ("the Act"), alleging disability since August 1, 2013. (See Tr. 11, 169). Plaintiff's claim was denied initially and upon reconsideration. (See Tr. 11, 90, 102). The Social Security Administrative Law Judge ("ALJ") held a hearing on September 29, 2016, at which Plaintiff, an attorney representative, and an impartial vocational expert appeared. (See Tr. 11, 31). On November 14, 2016, the ALJ decided that Plaintiff was not disabled within the meaning of the Act from April 4, 2014, through the date of the decision. (See Tr. 21). On May 15, 2017, the Appeals Council denied Plaintiff's request for review (See Tr. 1).

On September 24, 2018, in a written Order, this Court remanded the ALJ's November 24, 2016 decision. (See Tr. 667–82). Pursuant to the remand order, the Appeals Council directed the

-1-

ALJ to address the ability of Plaintiff to stay on task in light of a moderate limitation in concentration, persistence, and pace and to explain why Plaintiff did not require such limitation.

On remand, the ALJ held another hearing, at which Plaintiff, an attorney representative, and an impartial vocational expert appeared. (See Tr. 3000). On September 6, 2019, the ALJ decided that Plaintiff was not disabled within the meaning of the Act from April 4, 2014, through the date of the decision. (See Tr. 647). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**II.      Factual Background**

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

**III.     Standard of Review**

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the

-2-

Case 3:20-cv-00569-MOC   Document 22   Filed 11/29/21   Page 2 of 15

reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

   a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

   b. An individual who does not have a "severe impairment" will not be found to be disabled;

   c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

   d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

   e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

   c. **The Administrative Decision**

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). At step one, the ALJ found that Plaintiff had not engaged in SGA since April 4, 2014, and at step two that Plaintiff had the following severe impairments: degenerative-disc disease, hypothyroidism, gastroesophageal-reflux disease, and an affective disorder. (See Tr. 637). The ALJ found at step three that none of Plaintiff's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (See Tr. 638).

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform medium work, as defined in 20 C.F.R. § 416.967(c), except that: "he is limited to occasional bending, stooping, squatting, crouching, crawling, balancing, and climbing. Furthermore, he is limited to simple, routine, repetitive tasks in a low production setting which would also reduce the stress level [--] either low or no production." (Tr. 639).

The ALJ found at step four that Plaintiff was unable to perform any past relevant work and at step five that jobs existed in significant numbers in the national economy that Plaintiff could have performed. (See Tr. 645, 646). Thus, the ALJ decided that Plaintiff was not disabled within the meaning of the Act from April 4, 2014, through September 6, 2019. (See Tr. 28). On September 16, 2020, the Appeals Council declined to assume jurisdiction and stated that the ALJ's decision is Defendant's final decision after federal-court remand. (See Tr. 625–26).[1]

---

[1] In declining to assume jurisdiction, the Appeals Council stated that, in support of his findings, the ALJ "adequately evaluated the evidence regarding the claimant's ability to stay on task, and provided adequate rationale to conclude that the claimant was capable of staying on task for at least two hours at a time." (See Tr. 625). The Appeals Council also concluded that the ALJ "adequately complied with the court's remand in re-evaluating the claimant's ability to stay on task, and by incorporating reasonable corresponding limitations in the [RFC] assessment." (Tr. 625–26).

V.     **Discussion**

Plaintiff presents two arguments before this Court: (1) substantial evidence does not support the ALJ's mental-RFC finding and (2) the ALJ did not the ALJ properly evaluate Plaintiff's activities.

**A. Plaintiff's Contention that Substantial Evidence Does Not Support the ALJ's Mental-RFC Finding**

As his first assignment of error, Plaintiff contends that substantial evidence does not support the ALJ's mental-RFC finding. For the following reasons, this assignment of error is overruled.

Here, the ALJ found, when assessing impairment severity and evaluating the Listings, that Plaintiff had moderate limitation in concentration, persistence, or pace (CPP). (See Tr. 638). Later, when assessing Plaintiff's mental RFC, the ALJ found that Plaintiff was limited to simple, routine, repetitive tasks (SRRTs) in a low-production setting "which would also reduce the stress level [--] either low or no production." (See Tr. 639). Substantial evidence supports the ALJ's mental-RFC finding. Plaintiff argues that neither mental-RFC limitation—SRRTs or the low-production setting—facially accounts for a moderate CPP limitation. (See Pl. Br. 14–17).

Plaintiff argues that the RFC limitation that the ALJ found does not account for moderate limitations in CPP any more than the limitations found in Davis v. Saul, 3:18-cv00367-MR, 2019 WL 4233553, at *3–4 (W.D.N.C. Sept. 5, 2019), in which this Court held that SRRTs and a work environment free of fast-paced production requirements involving only simple work-related decision and routine workplace changes failed to account for moderate limitations in CCP. (Pl. Br. 16). However, there is no per se rule under Davis regarding moderate limitations in CCP. Rather, "'[t]he inquiry, as is usually true in determining the substantiality of evidence, is

case-by-case.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Biestek v. Berryhill, 139 S. Ct. 1148, 1157 (2019).

The Court notes, moreover, that Plaintiff has not cited any evidence in challenging the ALJ's finding on Plaintiff's RFC. See Parms v. Colvin, No. 1:13-cv-1002, 2015 WL 1143209, at *4 (M.D.N.C. Mar. 13, 2015) ("In order to successfully challenge the ALJ's formulation of Plaintiff's RFC, [Plaintiff] must explain (with supporting evidence) what other functional limitations the ALJ should have included or what the ALJ should have found as the proper RFC."). It is Plaintiff's burden to establish a specific functional limitation in excess of the ALJ's RFC finding. See Durham v. Saul, No. 3:20-cv-00295-KDB, 2021 WL 1700353, at *5 (W.D.N.C. Apr. 29, 2021) ("Plaintiff not the Commissioner bears the burden of establishing h[is] limitations . . . .") (citing Hendrickson v. Berryhill, No. 1:16-cv-00367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) ("A claimant has the burden to prove the extent of his functional limitations; it is not the ALJ's burden to prove a lack of limitations.") (citing Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013)). Here, Plaintiff has not established an additional functional limitation.

Next, Plaintiff further challenges the ALJ's finding on Plaintiff's RFC by noting that the Fourth Circuit stated in Mascio v. Colvin that "[a]n ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d 632, 638 (4th Cir. 2015). However, as subsequent case law has made clear, the statement in Mascio is not to be read as categorical. Significantly, in Shinaberry, the Fourth Circuit found that the ALJ "sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for Shinaberry's . . . moderate limitations in her concentration, persistence or pace[.]" 952 F.3d at 121; See also, e.g.,

Burley v. Saul, No. 3:20-cv-00299-KDB, 2021 WL 3488088, at *3 (W.D.N.C. Aug. 9, 2021) ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.") (citations and internal quotation marks omitted); Wilson v. Saul, No. 1:19-cv00103-FDW, 2020 WL 5370960, at *8–9 (W.D.N.C. Sept. 8, 2020) ("Similar to the ALJ in Shinaberry v. Saul, the ALJ in the case at hand discussed in detail the psychological evaluations performed on Plaintiff by Dr. Bierrenbach as well as her Function Reports, and sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for Plaintiff's moderate limitations.").

     Here, the ALJ gave some weight to the May 2014 function report completed by Plaintiff's daughter, who lived in the same house with Plaintiff, and who stated that Plaintiff played on the computer for a couple hours at a time; was able to handle his money, bills, and accounts; read and watched TV well and did both every day, with no changes due to his impairments; was not affected in his abilities to complete tasks, concentrate, understand, or follow instructions; had no change in his ability to pay attention; and finished what he started. (See Tr. 203–10, 645). The ALJ also discussed and relied on the May 2014 consultative-examination report of Dr. Ritterspach, a licensed psychologist. (See Tr. 325–27, 642). Dr. Ritterspach found on mental-status exam that, among other things, Plaintiff was able to follow simple directions and had low-average or average intellectual functioning, normal memory and concentration, and intact insight and judgment. (See Tr. 326, 642). Dr. Ritterspach also opined that, among other things, Plaintiff could understand, retain, and follow directions and appeared able to sustain attention to perform simple, repetitive tasks. (See Tr. 326, 642, 645). The ALJ

properly gave "significant weight to Dr. Ritterspach's opinion as reflected in the relevant [RFC] finding[] because his opinion is consistent with his evaluation notes and with the totality of the evidence." (Tr. 642, 645).

Further, the ALJ's findings are notably more restrictive than those of the State-agency psychological consultants, who evaluated the available evidence, including Dr. Ritterspach's consultative-examination report. In May 2014, Dr. Newman stated:

> Frankly, any treatment appears likely associated w/ his longstanding substance dependence. . . . Review of psych CE shows mental status exam is completely within normal limits with virtually no functional difficulties. Additionally, the [claimant] reported that [mental-health] issues never interfered with his ability to work. He stated that he stopped working in order to get sober. He attributed inability to work to alleged medical problems.[2] [Claimant] has a [high-school] education in standard academic classes, [history] of supervisory work roles, no [mental-health] treatment, normal mental status exam, normal status at MEDI CE. Body of evidence does not reveal any significant [mental-health] functional limitations providing continued abstinence from substance abuse as currently alleged.

(Tr. 65). Dr. Newman concluded, "Totality of the evidence indicates non-severe impairment." (Id.). In July 2014, Dr. Cyr-McMillon independently gave the same analysis and made the same finding of a non-severe mental impairment. (See Tr. 77–78).

The evidence further shows that during March 2017, Plaintiff presented because he needed help to stop drinking. (See Tr. 643, 804). He reported that he had been sober for over

---

[2] Dr. Ritterspach's report states:

> When asked why he stopped working at his last job, [Plaintiff] stated, "To quit drinking. I was in rehab seventeen or eighteen times. I quit everything. Drank for a year. Then quit." . . . When asked what interfered with his ability to work, he reported, "My body is falling apart. I can't find a job." . . . He could do his job well when sober, but he did often come to work intoxicated or partially so.

(Tr. 325).

seven years but went on a three-day drinking binge two weeks prior, which resulted in increased depression. (See id.). On mental-status exam, Plaintiff was fully oriented; was cooperative; denied suicidal ideation, homicidal ideation, and hallucination; had normal eye contact; was able to perform all activities of daily living independently; had normal speech; had fair mood with appropriate affect; had good thought process and congruent thought content; had good perception; had marginal judgment, poor insight, and poor impulse control due to his history of alcohol use; and had good short-term and long-term memory. (See Tr. 644, 805). In sum, the ALJ's findings are consistent with settled Fourth Circuit law regarding simple, routine tasks or unskilled work.

Next, the Court finds that substantial evidence supports the ALJ's finding of Plaintiff's limitation to a low-production setting.³ In challenging the ALJ's finding as to a low-production setting, Plaintiff argues that "[i]n the Fourth Circuit, cases have found that, without more, a limitation to low production or non-production-oriented work setting is undefined and therefore not amenable to judicial review, and thus does not account for moderate limitations in CPP." (Pl. Br. 15) (citing Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019); Perry v. Berryhill, 765 Fed. Appx. 869 (4th Cir. Mar. 8, 2019) (unpublished)). As Defendant notes, however, Perry involved a limitation to a non-production-oriented work setting. Thomas did not involve a limitation to a low-production setting, the limitation at issue here. Rather, Thomas involved a limitation to work requiring a production rate or demand pace—terms that, the Fourth Circuit stated, "appear in a

---

³ At the hearing, the ALJ referred in the hypothetical question to "a low production setting, which also would reduce the stress level – could either be low or no production." (Tr. 3021). That is, the ALJ commented that the limitation to a low-production setting, like the limitation to SRRTs, would reduce the stress level of the work. The ALJ further specified that the limitation could be either low production or no production. Given that RFC is the most that the individual can do, the limitation effectively is a low-production setting.

-10-

vanishingly small number of Social Security cases involving RFC evaluations" and that were "not common enough for [the court] to know what they mean without elaboration." 916 F.3d at 312.[4] By contrast, as this Court has stated, having expressly considered the relevant Fourth Circuit precedent, the term low-production environment "has been used in this district and elsewhere to describe a claimant's limitations." Hullender v. Saul, No. 318-cv-00261-MOC-WCM, 2019 WL 4439488, at *4 (W.D.N.C. Sept. 16, 2019) (citation omitted).[5]

Indeed, the vocational expert understood the term low-production setting, explaining that "when taking into consideration . . . the no to low production work setting, that characteristic was testified to based on a reasonable degree of vocational certainty that is a result of [her] education and training, also experience with employers as well as job search and placement."[6] (Tr. 3022). Here, the ALJ's statement that the low-production-setting limitation would "reduce the stress level" provides context for the meaning of and rationale for the limitation. Thus, limiting Plaintiff to a low-production setting facially addressed Plaintiff's moderate CPP deficits and served as an adequate narrative to support the RFC assessment without needing further explanation. Accord Everett v. Berryhill, No. 3:19-cv-00246-GCM, 2020 WL 6567141, at *3-4 (W.D.N.C. Nov. 9, 2020) (where this Court "address[ed] whether the ALJ sufficiently laid out his reasoning that Plaintiff should be limited to no assembly line work and no production work where the ALJ gave no definition of what 'production work' means," observed that "[c]ourts do

---

[4] Moreover, the Thomas court held that use of those terms without elaboration was only one of the "missteps in the ALJ's RFC evaluation" that, "[c]ombined," "frustrate[d] [the court's] ability to conduct meaningful appellate review . . . ." Thomas, 916 F.3d at 312.
[5] This Court also noted in Hullender, again having considered relevant Fourth Circuit precedent, that the ALJ's explanation—that the plaintiff was capable of SRRTs in a low-stress and low-production environment and that the plaintiff could work with only occasional exposure to people—was adequate. 2019 WL 4439488, at *4.
[6] As Defendant notes, Plaintiff's attorney had "no follow-up" when given the opportunity to question the vocational expert following that explanation. (id.).

not agonize over the various interpretations of non-production limitations but instead take time to determine whether a non-production limitation adequately addresses the claimant's moderate CPP assessment," and held that "the ALJ's discussion, particularly where he limits Plaintiff to no assembly-line and no production work in the same sentence, provides enough context to understand the meaning of 'no production work' and the rationale behind excluding 'production work.'").

Finally, Plaintiff has not made any evidentiary showing contradicting the ALJ's finding. Thus, no remand is warranted, particularly given the lack of any conflicting evidence or specific allegation of greater functional limitation than the ALJ found. The ALJ noted that, according to Plaintiff's daughter, Plaintiff responded "okay" to stress, as she explained that he just got upset and agitated). (See Tr. 209, 639). The ALJ noted Plaintiff's testimony that his work as a truck driver ended in part because of stress. (See Tr. 640, 3004; Pl. Br. 7). The ALJ also noted Dr. Ritterspach's opinion—to which the ALJ gave significant weight—that Plaintiff had adequate ability to tolerate the mental stress and pressures associated with day-to-day work activity. (See Tr. 326, 642, 645). Accordingly, the ALJ reasonably reduced the stress level by limiting Plaintiff to a low-production setting. (See Tr. 639). In sum, for the reasons stated herein, substantial evidence supports the ALJ's mental-RFC finding. Thus, Plaintiff's first assignment of error is overruled.

**B. Plaintiff's Contention that the ALJ Did Not Properly Evaluate Plaintiff's Activities**

As his next assignment of error, Plaintiff argues that the ALJ "err[ed] by determining that [Plaintiff's] statements were inconsistent with the record because [he] performed minimal daily activities, including caring for young children." (Pl. Br. 17). However, as the Appeals Council

correctly concluded in declining to assume jurisdiction, Plaintiff's argument is unpersuasive. (See Tr. 626).

In support of his paragraph-B findings and his RFC finding, the ALJ explained that Plaintiff's activities indicate that he could perform simple, routine, repetitive tasks, while staying on task for two hours at a time. (See Tr. 638–41, 644–45). For example, the ALJ noted the following: Plaintiff did his own laundry; cared for his personal needs and grooming independently; did his own lawn work with breaks; went grocery shopping with his daughter; and managed his own finances. (See Tr. 638, citing Tr. 47, 49, 51, 53, 205–06). He watched his minor grandchildren for one or two hours while his daughter went out, which, the ALJ reasonably explained, certainly required being on task throughout the time of supervision. (See Tr. 638–39, citing Tr. 51).[7] Plaintiff read the news and researched on the internet. (See Tr. 46, 50, 639). He mostly watched television or read or just picked a subject and got on the internet to try to learn something. (See Tr. 639–41, 644–45, 3011, 3018). He spent two hours on the internet (See Tr. 203, 639–41, 644–45, 3019). He occasionally went to Alcoholics Anonymous and talked to a therapist. (See Tr. 639–41, 644, 3012). He washed the dishes, ran the washing machine, and cleaned the kitchen; and he cleaned his room. (See Tr. 639–41, 644, 3014). He watched his daughter's children after school. (See Tr. 639–41, 644–45, 3015). He watched his granddaughter play soccer. (See Tr. 639–41, 644–45, 3016).[8]

---

[7] Plaintiff argues that "the fact that [he] cares for school age children from time to time for one to two hours does not necessarily support the inference that he could remain on task for 2 hours at a time in the context of an 8-hour day." (Pl. Br. 17). However, the ALJ did not find the activity dispositive of Plaintiff's ability to work an eight-hour day. Rather, he reasonably found that it indicates that Plaintiff could stay on task (to perform SRRTs) for two hours at a time.
[8] As discussed, supra, the ALJ also noted that, even when Plaintiff was admitted in March 2017 for help to stop drinking, he was found (on mental-status exam) able to perform all activities of daily living independently. (See Tr. 644, 805).

Plaintiff argues that the ALJ "neglected to note" that he "performed his domestic duties in short periods of time, and not in the context of an 8-hour day." (Pl. Br. 17). Plaintiff acknowledges, however, the ALJ's recognition that Plaintiff did lawn work with breaks (see Pl. Br. 17, citing Tr. 638); the ALJ noted that Plaintiff spent about two hours on the computer and watched his grandchildren for one or two hours; and there is no indication that the ALJ failed to consider any relevant aspect of Plaintiff's other activities.[9] Plaintiff argues that "performing these activities does not provide a basis for concluding that [he] could perform substantial gainful activity." (Pl. Br. 17). However, the ALJ did not find that Plaintiff's activities are dispositive of his ability to perform SGA. Rather, "[t]he ALJ simply considered Plaintiff's activities of daily living as one factor among many in evaluating Plaintiff's subjective complaints." Amavisca v. Berryhill, No. 5:18-cv-26-MOC, 2018 WL 5722663, at *12 & n.22, n.23 (W.D.N.C. Nov. 1, 2018) (finding that "Plaintiff has not put forward any evidence other than his own testimony that conflicts with the ALJ's conclusion that he could perform a limited range of medium work" and citing cases in which courts upheld findings of no disability where the claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day; and where the claimant reported activities involving crocheting, reading, spending time with family, watching television news programs, and using a computer for social networking and email).

---

[9] The Appeals Council correctly explained, in declining to assume jurisdiction that the ALJ reasonably concluded that Plaintiff's activities, including caring for young children, were "an appropriate factor to consider in finding the claimant could stay on task for up to two hours at one time. He also reasonably considered other factors in finding [that] the claimant could perform full-time work, including the claimant's other activities of daily living, use of medications, and type of treatment." (Tr. 626) (citing pages 6–7 and 10 of the ALJ's decision).

In sum, for the reasons stated herein, the ALJ properly evaluated Plaintiff's activities. Thus, Plaintiff's second assignment of error is overruled.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 16) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 20) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: November 24, 2021

Max O. Cogburn Jr.
United States District Judge